## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **JOHNATHAN DANIEL PARIS,** | ) | |
| **ID # 30268-076,** | ) | |
| **Movant,** | ) | |
| | ) | **No. 3:20-CV-2852-N-BH** |
| **vs.** | ) | **No. 3:17-CR-262-N(5)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent.** | ) | **Referred to U.S. Magistrate Judge[1]** |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings and applicable law, the *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on September 14, 2020 (doc. 1), should be **DENIED** with prejudice.

### I.    BACKGROUND

Johnathan Daniel Paris (Movant) challenges his federal conviction and sentence in Cause No. 3:17-CR-262-N(5).  The respondent is the United States of America (Government).

### A.    <u>Conviction and Sentencing</u>

After being charged by indictment with four others, Movant was charged by superseding information with one count of possession with the intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count One); the superseding information also included a criminal forfeiture notice under 21 U.S.C. § 853(a). (*See* docs. 1, 73.)[2]  He pled guilty to the superseding information, under a plea agreement.  (*See* docs. 74, 87.)

In his plea agreement, Movant stated that he understood and waived his rights to plead not

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.

[2] Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, 3:17-CR-262-N(5).

guilty, to have a trial by jury, to have his guilt proven beyond a reasonable doubt, to confront and cross-examine witnesses, to call witnesses, to not be compelled to incriminate himself, and to have the charges against him presented to the grand jury.  (*See* doc. 74 at 1.)[3]  He agreed that the factual resume he signed was true and would be submitted as evidence.  (*See id.* at 2.)  The plea agreement set out the maximum penalties; it stated that Movant had reviewed the federal sentencing guidelines with counsel and he understood that his sentence would be imposed by the Court after consideration of the sentencing guidelines, which were advisory and not binding, and that no one could predict with certainty the outcome of the Court's consideration of the guidelines.  (*See id.* at 2-3.)  He understood that the Court had sole discretion to impose his sentence.  (*See id.* at 3.)  He had thoroughly reviewed all legal and factual aspects of the case with counsel, received satisfactory explanations from counsel concerning each paragraph of the plea agreement, and concluded that it was in his best interest to enter into the plea agreement rather than to proceed to trial.  (*See id.* at 6-7.)  The guilty plea was freely and voluntarily made and not the result of force or threats, or of promises apart from those included in the plea agreement, and there were no promises from anyone as to what sentence the Court would impose.  (*See id.* at 6.)

In the plea agreement, he also waived his right to appeal his conviction and sentence and his right to contest his conviction and sentence in a collateral proceeding, except that he reserved the right (a) to bring a direct appeal of a sentence exceeding the statutory maximum punishment or an arithmetic error at sentencing, (b) to challenge the voluntariness of his guilty plea or the appeal waiver, and (c) to bring a claim of ineffective assistance of counsel.  (*See id.*)  In exchange, the Government agreed not to bring any additional charges against him based on the conduct underlying and related to his guilty plea, and to dismiss any remaining charges against him in the

---

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

pending indictment after sentencing.  (*See id.* at 5.)

At his re-arraignment on November 7, 2017, Movant acknowledged under oath that he had read the plea agreement and factual resume before he signed them, he understood and had committed each of the essential elements of the charged offense, and the facts stated in his factual resume were true and correct.  (*See* doc. 229 at 12-13, 17.)  He understood the rights he was giving up by pleading guilty and that he was waiving his right to appeal from or collaterally challenge his conviction, except to bring a direct appeal of a sentence exceeding the statutory maximum or arithmetic errors at sentencing, to challenge the voluntariness of his guilty plea or appeal waiver, and to bring a claim of ineffective assistance of counsel.  (*See id.* at 6-8, 10-11, 16-17.)  He affirmed that he had discussed with counsel how the sentencing guidelines worked; he understood that the guidelines were advisory and that his punishment was entirely up to the Court.  (*See id.* at 7-9.)  He understood that he should not depend or rely on any promise or statement by anyone, including his counsel, as to what sentence would be imposed, and he affirmed that outside of the written plea documents, no one had made any promise or assurance to him of any kind in an effort to get him to plead guilty.  (*See id.* at 7-8, 14.)  He acknowledged that by pleading guilty, he was facing a term of imprisonment of not more than 20 years.  (*See id.* at 14-15.)  He pled guilty, and the Court found that his guilty plea was knowing and voluntary.  (*See id.* at 17-18; docs. 89, 108.)

On February 12, 2018, the United States Probation Office (USPO) prepared a Presentence Investigation Report (PSR) in which it applied the 2016 United States Sentencing Guidelines Manual.  (*See* doc. 127-1 at ¶ 24.)  The PSR attributed to Movant separate quantities of methamphetamine actual and methamphetamine, which were converted to their respective marijuana equivalents.  (*See id.* at ¶¶ 17-18.)  Based on the quantity of marijuana equivalent for which Movant was held accountable, his base offense level under the drug quantity table of

3

U.S.S.G. § 2D1.1(c)(3) was 34.  (*See id.* at ¶ 25.)  Two levels were added based on importation of the methamphetamine from Mexico.  (*See id.* at ¶ 26.)  The PSR determined that Movant was a career offender under U.S.S.G. § 4B1.1(b), but because the base offense level under § 4B1.1(b) was not higher than the base offense level under § 2D1.1(c)(3), the latter controlled.  (*See id.* at ¶ 31.)  Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 33.  (*See id.* at ¶¶ 32-34.)  Because he was designated as a career offender, his criminal history category was increased from V to VI.  (*See id.* at ¶¶ 48-49.)  Based on a total offense level of 33 and a criminal history category of VI, the resulting guideline imprisonment range was 235 to 293 months.  (*See id.* at ¶ 115.)  Because 240 months was the statutory maximum for the offense, the guideline imprisonment range became 235 to 240 months.  (*See id.*)

On April 20, 2018, Movant objected to the PSR on grounds that a prior state conviction from Tennessee was not a controlled substance offense warranting his designation as a career offender under § 4B1.1.  (*See* doc. 158.)  On April 30, 2018, the USPO submitted an addendum to the PSR in which it rejected his objection, supported the PSR as written, and provided supplemental information from medical and other records relating to his health and substance abuse history.  (*See* doc. 159-1.)  Movant also filed a sentencing memorandum requesting a downward departure from the guideline imprisonment range to a sentence not to exceed 120 months' imprisonment based on mitigating issues, such as his traumatic childhood, medical and psychological issues, and history of substance abuse and addiction.  (*See* docs. 161, 164.)

At sentencing, the Court determined that the methamphetamine quantities for which Movant was held accountable in the PSR should be treated as a methamphetamine mixture, which reduced his total offense level from 33 to 31 and resulted in a new guideline imprisonment range of 188 to 235 months.  (*See* doc. 228 at 2-3, 8.)  His counsel argued that Movant lacked actual

4

knowledge of any importation for purposes of the two-level importation enhancement, and that mitigating factors warranted a downward departure to no more than 120 months' imprisonment. (*See id.* at 3-5.)  The Court adopted the factual contents of the PSR and addendum, overruled Movant's objections, and declined to vary from the guideline sentencing range.  (*See id.* at 8.)  By judgment dated May 18, 2018, it sentenced Movant to 188 months' imprisonment, to be followed by a three-year term of supervised release.  (*See* doc. 166 at 1-3.)

On July 9, 2018, and July 10, 2018, Movant filed *pro se* notices of appeal to the United States Court of Appeals for the Fifth Circuit (Fifth Circuit).  (*See* docs. 177-78.)  On appeal, the Government moved to dismiss the appeal as barred by the appeal waiver in the plea agreement. *See* Appellee's Mot. to Dismiss, *United States v. Paris*, No. 18-10884 (5th Cir. Sept. 13, 2019), doc. 58.  On October 22, 2019, the Fifth Circuit granted the motion and dismissed the appeal.  (*See* doc. 234.)  Movant did not file a petition for a writ of certiorari with the Supreme Court.

**B.    <u>Substantive Claims</u>**

Movant asserts the following grounds of ineffective assistance of counsel:

(1) Court Appointed Defense Counsel Failed to Challenge the Plaintiff's Standing and Subject-Matter Jurisidiction [sic] required to proceed the forwarding of a [sic] "Adversarial Judicial Criminal Proceeding"; without challenging the Plaintiff as to Federal Rules of Civil Procedure "(F.D.Cv.P.)" Rule 12(b)(1), [Movant] was without ability to later challenge after pre-trial the Subject-Matter Jurisdiction and standing before the court;

(2) Court Appointed Defense Counsel failed to challenge the Plaintiff's Suit was not a criminal action that can be Constitutionally presented before the United States district [sic] Court, and Motion the Court to dismiss the case that was in violation of F.R.Cr.P. Rule 1 (a)Scope(5) [sic] Excluded Proceedings: Proceedings not governed by these Rules include (B) A civil property forfeiture for violating a Federal Statute; (C) the Collection of a fine or penalty;

(3) Court Appointed Defense Counsel failed to challenge the warrantless search of his vehicle as Unconstitutional;

(4) Court Appointed Defense Counsel provided a conflict of interest by allowing

the Government to place a [sic] impediment against his clients [sic] Statutorial [sic] Right to collaterally attack his sentencing and judgment on appeal and HABEAS CORPUS proceedings by subjecting the condition of a plea agreement stems [sic] the waiver of 18 USC 3742 right to appeal;

(5) During Sentencing Court Appointed counsel for the defendant failed to properly argue sentencing calculations and place an adversarial role against the unqualified career criminal enhancements, and the unverified Import enhancement;

(6) Court Appointed Counsel Failed to file a timely Appeal; and

(7) Court Appointed Defense counsel after being ordered by the Courts to provide proper communications with his client and file a timely and proper Brief, Failed to do so for his client.

(No. 3:20-CV-2852-N-BH, doc. 1 at 15, 19-20, 22-23, 25-26, 28.)  On November 12, 2020, the Government filed a response.  (*See id.*, doc. 5.)  Movant filed a reply on November 25, 2020.  (*See id.*, doc. 6.)  On May 10, 2022, Movant sought to amend his § 2255 motion to raise additional grounds that his: (1) "plea agreement was not knowingly and voluntarily made" (Supplemental Ground 1); (2) "Counsel was ineffective for failure to conduct an adequate investigation during the pretrial phase" (Supplemental Ground 2); (3) "Counsel was ineffective for failure to subject his case to the adversarial test" (Supplemental Ground 3); and (4) "Counsel was ineffective for failure to suppress evidence from the traffic stop" (Supplemental Ground 4).  (*Id.*, doc. 7 at 2.) The Government responded on June 10, 2022.  (*See id.*, doc. 9.)  Movant did not file a reply.

## II.    SCOPE OF RELIEF UNDER § 2255[4]

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if

---

[4] The Government argues that three of Movant's amended grounds are time-barred because they were raised for the first time more than one year after his conviction became final under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104–132, 110 Stat. 1214, and because they do not relate back to any timely filed claims.  (*See* No. 3:20-CV-2852-N-BH, doc. 9 at 4-9.)  Because the limitations issue is not jurisdictional, however, courts may bypass it and proceed to the merits of a habeas action, as in this case.  *See, e.g.*, *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998).

6

condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well-established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[ ] objectives" of the procedural default doctrine "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

### III.    INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was

7

constitutionally effective. *Id.* at 697. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (recognizing that the inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

The federal constitution also guarantees a criminal defendant the effective assistance of counsel on appeal. *Lucey*, 469 U.S. at 396. Whether appellate counsel has been ineffective is also determined by using the standard enunciated in *Strickland*. Under *Strickland*, the movant must show a reasonable probability that but for counsel's deficient representation, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting

*Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and internal citations omitted). To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

A.    **Pre-Plea Proceedings**

    *1.  Subject-Matter Jurisdiction*

    In his first ground, Movant contends that counsel was ineffective because he "Failed to Challenge the [Government's] Standing and Subject-Matter Jurisidiction [sic] required to proceed the forwarding of a [sic] 'Adversarial Judicial Criminal Proceeding[.]'" (No. 3:20-CV-2852-N-BH, doc. 1 at 15.) He argues that "[t]he Docket shows no record of the required TITLE 28 USCS Chapter 85, Statute Sections 1330 to 1369 and nor [sic] does it provide the additional Standing requirements by the [Government] to forward an 'Adversarial Judicial Criminal Proceeding." (*Id.*, doc. 1 at 17; *see also id.*, doc. 6 at 5-6, 18.) He claims that when counsel "failed to place an 'Adversarial Testing' <u>Strickland v. Washington</u> [sic], within the Pretrail [sic] proceedings forwarded by the [Government] to challenge the [Government's] Standing and Vacant Subject-Matter Jurisidiction [sic] by means of a F.R.Cv.P. Rule 12(b)(1); [sic] the deficiency cause [sic] the [Movant] to no longer be able to challenge such vacancy and subjected [Movant] to an impediment that the Court itself should have noticed." (*Id.*, doc. 1 at 17-18.)

    "Under 18 U.S.C. § 3231, '[t]he district courts of the United States. . . have original jurisdiction. . . of all offenses against the laws of the United States.'" *United States v. Scruggs*,

691 F.3d 660, 667 (5th Cir. 2012) (quoting 18 U.S.C. § 3231) (*Scruggs I*).  "Subject matter

jurisdiction, or the court's power to hear a case, is straightforward in the criminal context."  *United

States v. Scruggs*, 714 F.3d 258, 262 (5th Cir. 2013) (citation and internal quotation marks omitted)

(*Scruggs II*).  It is determined by looking at the indictment or information.  *See Scruggs I*, 691 F.3d

at 667-68.  "[A] federal criminal case is within the subject matter jurisdiction of the district court

if the indictment charges . . . that the defendant committed a crime described in Title 18 or in one

of the other statutes defining federal crimes."  *Scruggs II*, 714 F.3d at 262 (citation and internal

quotation marks omitted).  Title 21 of the United States Code is one such statute defining federal

crimes that would result in a federal criminal case being within a district court's subject-matter

jurisdiction.  *See United States v. Rojas*, 812 F.3d 382, 390 n.2 (5th Cir. 2016) ("The indictment

charged the defendants with committing federal crimes under Title 21 of the United States Code.

Thus, the district court had subject-matter jurisdiction under 18 U.S.C. § 3231.").

        Here, the indictment charged Movant with violation of 21 U.S.C. §§ 846, 841(a)(1) and

(b)(1)(A), and the superseding information charged him with violation of 21 U.S.C. §§ 841(a)(1)

and (b)(1)(A); both charging documents also included a forfeiture notice under Titles 18 and 21.

(*See* doc. 1 at 3-4, 8; doc. 73 at 1-2.)  The Court therefore had subject-matter jurisdiction in the

underlying criminal case.  *See Rojas*, 812 F.3d at n.2.  Because it had subject-matter jurisdiction,

Movant has not shown that a challenge to subject-matter jurisdiction was meritorious, and counsel

is not deficient for failing to make a meritless argument.[5]  *See Sones v. Hargett*, 61 F.3d 410, 415

n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point.")  He also

has failed to show *Strickland* prejudice.  *See, e.g.*, *United States v. Kimler*, 167 F.3d 889, 893 (5th

---

[5] Movant's argument that counsel should have challenged subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) is also without merit because the Federal Rules of Civil Procedure do not apply to criminal cases. *See, e.g.*, *United States v. Bouldin*, 466 F. App'x 327, 328 (5th Cir. 2012).

Cir. 1999) ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").  This claim should be denied.

### 2.  Nature of Action

In his second ground, Movant contends that counsel was ineffective because he "failed to challenge the [Government's] Suit was not a criminal action that can be Constitutionally presented before the United States district Court, and Motion the Court to dismiss the case that was in violation of F.R.Cr.P. Rule 1 (a)Scope(5) [sic] Excluded Proceedings[.]"  (No. 3:20-CV-2852-N-BH, doc. 1 at 19.)  He notes that Federal Rule of Criminal Procedure 1(a)(5) excludes from the rules proceedings involving "(B) A civil property forfeiture for violating a Federal Statute; [and] (C) the Collection of a fine or penalty[.]"  (*Id.*)  According to Movant, the "'Adversarial Judicial Criminal Proceeding' forwarded by the [Government] was in violation of Rule One (1) of the F.R.Cr.P.," and he cites various statutory provisions and cases in support that relate to maritime and admiralty proceedings, land acquired by the federal government, and territorial courts. (*See id.*; *id.*, doc. 6 at 6.)

Even assuming for purposes of this motion only that this claim was not waived by Movant's guilty plea,[6] his unsubstantiated allegations about the nature of his case are refuted by the record. He was charged in an Article III federal district court with committing federal statutory criminal

---

[6] Movant pled guilty in the underlying criminal case.  (*See* doc. 87.)  To the extent his guilty plea was knowing and voluntary, as discussed further below, he waived all non-jurisdictional claims related to alleged defects or deprivations during the initial appearance and pretrial stages of the underlying case, as well as any claims of ineffective assistance of counsel based on same.  *See United States v. Sublet*, 211 F. App'x 301, 302 (5th Cir. 2006) ("With respect to his guilty-plea convictions, [the defendant] has waived all non-jurisdictional defects in the proceedings before the district court by entering a valid, unconditional guilty plea."); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (concluding that guilty plea waived claim of ineffective assistance of counsel for failure to challenge the legality of the defendant's arrest); *Lynn v. United States*, No. 4:17cv670, 2020 WL 5797711, at *7 (E.D. Tex. Sept. 7, 2020) (rejecting claim of ineffective assistance of counsel for failure to investigate Fourth Amendment violation on grounds that issue was waived by voluntary guilty plea and meritless), *rec. adopted*, 2020 WL 5774899 (N.D. Tex. Sept. 25, 2020).

offenses within the Northern District of Texas; he was not charged in a territorial court[7] or with violation of any civil, maritime, or admiralty laws, and the action did not involve land acquired by the federal government.  (*See* docs. 1, 73.)  Any claim that the case was not criminal in nature is without merit, and because counsel is not deficient for failing to raise a meritless argument, Movant fails to satisfy the first *Strickland* prong.  *Sones*, 61 F.3d at n.5.  He also fails to show *Strickland* prejudice, as his unsubstantiated and conclusory allegations of prejudice do not satisfy his burden. *Kimler*, 167 F.3d at 893; *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition [ ], unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.").  This claim should be denied.

### 3.  *Vehicle Search*

In his third ground and Amended Ground 4,[8] Movant contends that counsel was ineffective because he "failed to challenge the warrantless search of his vehicle as Unconstitutional" and "fail[ed] to suppress evidence from the traffic stop," respectively.  (No. 3:20-CV-2852-N-BH, doc. 1 at 20, 22; *id.*, doc. 7 at 7.)  He argues that "[n]o where [sic] on Record does the Motion to suppress, or Motion to Dismiss by the Appointed Attorney for the [Movant] placed [sic] an Adversial [sic] Role against the Prosecutions [sic] case to challenge the unwarranted Search and Seizure violating [Movant's] FOURTH AMENDMENT'S [sic] 'Warrant Clause' and [Movant's]

---

[7] A "territorial court" is "[a] U.S. court established in a U.S. territory (such as the Virgin Islands) and serving as both a federal and state court."  *Territorial court*, Black's Law Dictionary (11th ed. 2019).

[8] Because resolution of some grounds for relief may impact some of the remaining claims, they are considered in an order different than presented by Movant.

DUE PROCESS." (*Id.*, doc. 1 at 20-21 (emphasis in original).)  He alleges that he "was removed along with his wife from the vehicle and was told to comply to the search of his vehicle and phone without warrant to do so," and that his vehicle was searched without his consent or a warrant and without counsel present.  (*Id.*, doc. 1 at 22.)  According to him, "[t]he officer who had stopped [Movant] was told three times no as to the request for the search of his vehicle." (*Id.*, doc. 6 at 8.) He claims it "was not until a show of police and law enforcement force of presence and after being read his miranda [sic] rights that the Fourth Amendment violation ensued." (*Id.*)

Even assuming for purposes of this motion only that the failure to move to suppress evidence from the search of Movant's vehicle or to otherwise challenge the search was deficient performance, as alleged, *Strickland* also requires a showing of resulting prejudice.  In the context of a guilty plea, "the habeas petitioner must show that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Bond v. Dretke*, 384 F.3d 166, 168 (5th Cir. 2004) (citation omitted).  Movant fails to provide any facts or evidence beyond conclusory allegations to show a reasonable probability that he would not have pled guilty and instead would have insisted on going to trial, however.

Further, even if counsel had successfully challenged the search and filed a successful motion to suppress evidence, "a district court may conduct an inquiry broad in scope, largely unlimited either as to the kind of information it may consider, or the source from which such information may come."  *United States v. Robins*, 978 F.2d 881, 891 (5th Cir. 1992).  The exclusionary rule of the Fourth Amendment, which generally "prohibits the introduction at trial of all evidence that is derivative of an illegal search," ordinarily does not apply to sentencing.  *United States v. Hernandez*, 670 F.3d 616, 620 (5th Cir. 2012) (citation and internal quotation marks omitted); *see also Robins*, 978 F.2d at 891 ("The exclusionary rule applicable to Fourth

Amendment violations is generally inapplicable to the district court's consideration of evidence for purposes of sentencing."). Movant provides no facts or evidence to show a reasonable probability that even if the challenged search was unlawful, the Court would have excluded the evidence from the search for sentencing purposes. He therefore cannot demonstrate that counsel was ineffective for failing to file a motion to suppress evidence or to otherwise challenge the search of his vehicle. Movant has failed to show *Strickland* prejudice, and his claims should be denied.

### 4. Defense

In Supplemental Ground 3, Movant contends that counsel "failed to subject his case to the adversarial test by failing to demonstrate any type of defense." (No. 3:20-CV-2852-N-BH, doc. 7 at 7.) He argues that "counsel failed to file pretrial motions and conduct an [sic] adequate discovery[,]" and "advised the Movant to plead guilty and he would receive a ten-year sentence." (*Id.*) He does not provide any facts or evidence to support his conclusory statements. Nor has he alleged or shown that any of these alleged deficiencies prejudiced his defense. His claim is conclusory and does not warrant habeas relief. *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) ("'[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.'"); *Miller*, 200 F.3d at 282; *Ross*, 694 F.2d at 1011. It should be denied.[9]

### B. Plea Proceedings

#### 1. Waiver of Appeal

In his fourth ground, Movant contends that counsel "provided a conflict of interest by allowing the Government to place a [sic] impediment against his clients [sic] Statutorial [sic] Right to collaterally attack his sentencing and judgment on appeal and HABEAS CORPUS proceedings

---

[9] To the extent Movant's claims regarding counsel's alleged deficiencies relating to pretrial motions, discovery, and sentencing advice may be liberally construed as reasserting any of his other grounds for relief regarding the vehicle search and counsel's representations about his sentence exposure, the claims fail for the same reasons.

by subjecting the condition of a plea agreement stems [sic] the waiver of 18 USC 3742 right to appeal." (No. 3:20-CV-2852-N-BH, doc. 1 at 22-23 (emphasis in original).)  Movant's allegations are liberally construed challenging the voluntariness of his appellate waiver. (*See id.*, doc. 1 at 22-23; *id.*, doc. 6 at 4-5, 9.)

For an appellate waiver to be knowing and voluntary, the defendant must know that he had, and was giving up, the right to appeal his sentence, and he must understand the consequences of the waiver. *See United States v. Jacobs*, 635 F.3d 778, 781 (5th Cir. 2011).  "If the district court accurately explains the terms and consequences of the waiver of appeal and the defendant states on the record that he understands them, the defendant's later contention that he did not really understand will not invalidate the waiver." *Id.*

Here, Movant's plea documents and responses under oath to the Court's questioning show that he knew and understood that his guilty plea limited his appellate rights.  The waiver provision of the plea agreement explicitly and unambiguously waived his right to directly appeal or collaterally challenge his conviction and sentence except in limited circumstances; Movant affirmed that he received satisfactory explanations from counsel concerning each paragraph of the plea agreement and how they affected his rights.  (*See* doc. 74 at 6-7.)  His sworn testimony during re-arraignment shows he was informed of and voluntarily and freely agreed to the waiver.  He affirmed that he read the plea agreement before he signed it and that he entered into it voluntarily and of his own free will.  (*See* doc. 229 at 13-14.)  He specifically affirmed that he understood his right to appeal or otherwise challenge his sentence, and that he wished to waive those rights except as to the limited circumstances set out in the waiver.  (*See id.* at 16-17.)  The totality of the circumstances shows that at the time of the re-arraignment proceedings, Movant understood that he was waiving his appeal rights as set forth in the plea agreement.  He entered his plea with

sufficient knowledge regarding the waiver of his appeal rights, including his right to present claims in a collateral attack under § 2255. He has not shown that his appeal waiver was involuntary based on alleged ineffective assistance of counsel under *Strickland*, and this claim should be denied.[10]

### 2.  Sentence Exposure

In his fourth and fifth grounds, Movant alleges that counsel "stat[ed] that the court would be only giving him 10 years per the Plea agreement," and that he believed he was going to receive a sentence of 120 months "based on the Court Appointed Counsels [sic] statements to him to solicite [sic] a guilty plea." (No. 3:20-CV-2852-N-BH, doc. 1 at 24, 26.) His reply alleges that "Court Appointed Counsel stated all that [Movant] could get was 120 Months[.]" (*Id.*, doc. 6 at 3; *see also id.*, doc. 6 at 9-10.) His allegations are liberally construed as a claim that counsel misrepresented the sentence he would receive if he pleaded guilty under the plea agreement.

"'[T]he negotiation of a plea bargain is a critical phase of litigation for the purposes of the Sixth Amendment right to effective assistance of counsel.'" *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010)). "'When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice.'" *Id.* (quoting *United States v. Rivas-Lopez*, 678 F.3d 353, 356-57 (5th Cir. 2012)).

> Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by *Strickland*. When the defendant lacks a full understanding of the risks of going to trial, he is unable to make an intelligent choice of whether to accept a plea or take his chances in court. By grossly underestimating [the defendant's] sentencing exposure . . . , [counsel]

---

[10] To the extent Movant characterizes his claim as one involving a conflict of interest, an actual conflict of interest "exists when defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000). Here, the alleged conflict appears to be premised on a conflict between counsel's interests and those of Movant, rather than the interests of multiple clients, so *Strickland* provides the proper standard of review. *See United States v. Newell*, 315 F.3d 510, 516 (5th Cir. 2002); *Beets v. Scott*, 65 F.3d 1258, 1270-72 (5th Cir. 1995).

> breache[s] his duty as a defense lawyer in a criminal case to advise his client fully
> on whether a particular plea to a charge appears desirable.

*United States v. Grammas*, 376 F.3d 433, 436-37 (5th Cir. 2004) (citations and internal quotation marks omitted). A significant miscalculation between counsel's erroneous sentence estimate and the actual sentencing range can constitute deficient performance. *See id.* at 437 (finding that counsel was deficient for advising his client that he faced only 6 to 12 months' imprisonment if convicted based on misunderstanding of the guidelines, when he actually faced a range of 70 to 87 months); *United States v. Herrera*, 412 F.3d 577, 581 (5th Cir. 2005) (stating that "[a]n attorney who underestimates his client's sentencing exposure by 27 months performs deficiently because he does not provide his client with the information needed to make an informed decision about accepting a plea offer or going to trial[,]" and remanding for determination of whether alleged misrepresentation was actually made).

Even assuming for purposes of this motion only that counsel was deficient in representing Movant's sentence exposure, deficient performance alone is insufficient to warrant relief under § 2255. *Strickland* also requires a showing of resulting prejudice. When a movant

> adduce[s] no proof that he was promised or assured of a specific sentence, but, rather, that counsel gave him his "best estimate" of what sentence might be given if he pled guilty . . . [and when] [t]he plea agreement and the record of the change of plea hearing are replete with references to the fact that the District Court would make the determinations with respect to his sentence under the sentencing guidelines, that the District Court could decline to follow recommendations, and that no promises had been made with respect to the sentence that the District Court would impose[,]

the district court properly denies relief for lack of prejudice. *United States v. Ritter*, 93 F. App'x 402, 404-05 (3d Cir. 2004); *see also United States v. Mackay*, No. 3:04-CV-0413-D, 2007 WL 700895, at *26-27 (N.D. Tex. Mar. 6, 2007).

Here, Movant was advised both through the plea agreement and by the Court in person that

by pleading guilty, he was subjecting himself to a maximum term of imprisonment of not more than 20 years.  (*See* doc. 74 at 2; doc. 229 at 14-15.)  He was also advised though the plea documents and at his re-arraignment that his sentence would be imposed after the Court's consideration of the sentencing guidelines, which were advisory and not binding.  (*See* doc. 74 at 3; doc. 229 at 8-9.)  He swore in open court that he understood he should never depend or rely on any statement or promise by anyone, including his counsel, about what his punishment would be, that no promise or assurance of any kind had been made to him to get him to plead guilty outside of the written plea documents, and that he understood that his sentence was entirely up to the Court. (*See* doc. 229 at 7-8, 14.)

Regardless of what counsel told him about his likely sentence, Movant cannot show prejudice under *Strickland* because his plea documents and responses under oath to the Court's questioning show that he was clearly informed about and understood his maximum sentence exposure when he pled guilty under the plea agreement.[11]  This claim should be denied.

## C.    Post-Plea Proceedings

### 1.    Sentencing Enhancements

In his fifth ground, Movant contends that counsel was ineffective during sentencing because he "failed to properly argue sentencing calculations and place an adversarial role against

---

[11] The Fifth Circuit has recognized a limited circumstance in which a movant may seek habeas relief on the basis that his attorney made alleged promises to him, even though inconsistent with representations he made in court when entering his plea. A movant is entitled to an evidentiary hearing if he presents evidence of: "(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise."  *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir.1998) (citing *Harmason v. Smith,* 888 F.2d 1527, 1529 (5th Cir. 1989)). A movant must produce independent indicia of the merit of the allegations of alleged promises, typically by way of affidavits from reliable third parties. *Id.*  When the movant's "showing is inconsistent with the bulk of his conduct or otherwise fails to meet his burden of proof in light of other evidence in the record," however, the Court may dispense with his allegations without an evidentiary hearing.  *Id.*  Here, Movant has not provided evidence of the specific terms of any alleged promise, including where and when counsel made the promise that allegedly caused him to plead guilty, or identified any eyewitness to the promise.  He has accordingly failed to provide independent indicia of the merit of his claim.  To the extent he argues that counsel promised he would receive a specific sentence, he has not demonstrated entitlement to an evidentiary hearing or to relief on this basis.

the unqualified career criminal enhancements, and the unverified Import enhancement."  (No. 3:20-CV-2852-N-BH, doc. 1 at 25; *see also id.*, doc. 6 at 9-10.)  He claims that "[a]t the time of sentencing if the [Movant's] Counsel would have placed proper argument to place his client with correct sentencing the [Movant] would have been sentence [sic] the 120 months he believed he was going to receive . . .."  (*Id.*, doc. 1 at 26.)

Regarding the career offender designation, Movant cites *Mathis v. United States*, 579 U.S. 500 (2016), and *Descamps v. United States*, 570 U.S. 254 (2013), and argues that counsel "failed to protect and challenge the Governments [sic] Career Criminal Enhancement as being overbroad." (No. 3:20-CV-2852-N-BH, doc. 1 at 25-26.)  This argument was raised and rejected on direct appeal when the appeal was dismissed.  *See* Appellant's Initial Brief, *Paris*, No. 18-10844 (5th Cir. Aug. 15, 2019), doc. 52-2; (doc. 234.)  Defendants who collaterally attack their federal convictions may not raise grounds previously raised on direct appeal.  *See United States v. Rocha*, 109 F.3d 225, 229-30 (5th Cir. 1997).  "It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (citing *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980)).  Movant is therefore not entitled to habeas relief on his claim regarding the armed career criminal enhancement, and it should be denied.

Regarding the importation enhancement, the PSR stated that based on the high purity of the samples tested in the underlying criminal investigation, the DEA learned that the methamphetamine was imported from Mexico.  (*See* doc. 127-1 at ¶ 15.)  The record demonstrates a factual basis for the application of the importation enhancement, and Movant provides no facts or evidence to challenge the PSR's findings.  Additionally, counsel argued at sentencing that the Court should consider Movant's lack of knowledge of any importation in determining his sentence.

19

(*See* doc. 228 at 3.)  Other than conclusory allegations, Movant has alleged no legitimate bases on which counsel could or should have challenged the importation enhancement. Because counsel is not deficient for failing to make a futile or meritless argument, and conclusory allegations are insufficient to show deficient performance, Movant fails to satisfy the first *Strickland* prong.  *See Sones*, 61 F.3d at n.5.  His conclusory allegations of prejudice are also insufficient to show a reasonable probability that the result of the proceedings would have been different but for counsel's alleged deficiencies in challenging the career criminal and importation enhancement. *Kimler*, 167 F.3d at 893; *Miller*, 200 F.3d at 282.  He has not satisfied his burden under *Strickland*, and the claim should therefore be denied.[12]

### 2.  *Appeal Filings*

In his sixth and seventh grounds, Movant contends that counsel was ineffective because he "[f]ailed to file a timely appeal," and failed "to provide proper communications with his client and file a timely and proper Brief" after being ordered to do so, respectively.  (No. 3:20-CV-2852-N-BH, doc. 1 at 26, 28; *see also id.*, doc. 6 at 10-11.)

Here, the record shows that Movant filed two *pro se* notices of appeal of the judgment in the underlying criminal case.  (*See* docs. 177-78.)  The Fifth Circuit docketed the notices as an appeal, issued a briefing notice, and granted a 15-day extension of time until August 15, 2019, for counsel to file a brief.  *See Paris*, No. 18-10844 (5th Cir. 2019), docs. 1, 48-50.  On August 15, 2019, counsel filed a 37-page brief arguing that Movant's guideline imprisonment range should have been lower because his prior Tennessee state conviction did not qualify as a controlled substance offense for purposes of the career offender designation.  *See* Appellant's Initial Brief,

---

[12] To the extent Movant's allegations attempt to rely on the merits of his fourth ground alleging ineffective assistance of counsel in connection with his appeal waiver, the claim should be denied for the same reasons explained in that ground.  (*See* No. 3:20-CV-2852-N-BH, doc. 1 at 26.)

*Paris*, No. 18-10844 (5th Cir. Aug. 15, 2019), doc. 52-2. The Government moved to dismiss the appeal as barred by Movant's appeal waiver. *See* Appellee's Mot. to Dismiss, *Paris*, No. 18-10884 (5th Cir. Sept. 13, 2019), doc. 58. On October 22, 2019, the Fifth Circuit granted the motion and dismissed the appeal. (*See* doc. 234.)

      Because the record demonstrates a direct appeal of the underlying judgment and a dismissal based on the Government's motion, Movant fails to show *Strickland* prejudice, i.e., a reasonable probability that the result of the proceedings would have been different had counsel, rather than Movant, filed a notice of appeal. *See, e.g.*, *Galvan v. United States*, No. 3:17-CR-00456-M-1, 2022 WL 1230078, at *3 (N.D. Tex. Mar. 31, 2022), *rec. adopted*, 2022 WL 1228209 (N.D. Tex. Apr. 26, 2022) (finding that "the record conclusively shows [the movant] received a direct appeal upon the filing of his *pro se* notice of appeal and the Fifth Circuit only dismissed the appeal when [the movant] failed to prosecute it. [The movant's] claim based on his trial counsel's alleged failure to file a direct appeal lacks merit," and citing cases) (citing cases). Additionally, to the extent Movant alleges that counsel failed to file a proper and timely brief, his allegations are refuted by the record, which shows that counsel filed a 37-page brief by the briefing deadline. He has provided no facts or evidence identifying what "proper communications" counsel failed to provide or showing a reasonable probability that any such communications would have changed the result of the proceedings. Because his conclusory and unsubstantiated allegations fail to demonstrate *Strickland* prejudice, the performance prong need not be addressed. *See Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995); *Miller*, 200 F.3d at 282; *Ross*, 694 F.2d at 1011. Movant has failed to satisfy his burden under *Strickland*, and this claim should be denied.

      **3.  *Failure to Investigate and Call Witnesses***

      In Supplemental Ground 2, Movant contends that counsel "was ineffective for failure to

for failure to conduct an adequate investigation" during the pretrial and sentencing phases.  (No. 3:20-CV-2852-N-BH, doc. 7 at 2, 5.)  He argues that counsel "overlooked an entire category of compelling mitigating evidence, evidence that might have caused the judge to rethink its assessment of [Movant's] moral culpability."  (*Id.*, doc. 7 at 5.)  He claims that counsel failed to contact or interview any of his family members, and that he "had a drug habit that he desperately wanted to get help for and there was obvious trauma he experienced in his life that could have contributed to the lifestyle that [he] was living[,]" but that "the court did not get an opportunity to make an assessment due to the inadequate investigate [sic]."  (*Id.*, doc. 7 at 5-6.)  He argues that counsel's "failure to present evidence of [Movant's] childhood and adult life from independent witnesses as well as the psychological effect was prejudicial to [him]," and that "[i]f Counsel had conducted an adequate investigation and presented witnesses [he] may have had an opportunity to request a downward departure."  (*Id.*)

Counsel has a duty to investigate the charges and evidence against his client.  *Strickland*, 466 U.S. at 690-91.  "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."  *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *see also United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir. 2000) (stating, in context of direct appeal that, "[t]o establish his failure to investigate claim, [the defendant] must allege with specificity what the investigation would have revealed and how it would have benefitted him.").  "[T]here is no presumption of prejudice based on the failure to investigate."  *Gonzalez v. United States*, Nos. 5:19-CV-145, 5:15-CR-1112-01, 2020 WL 1893552, at *3 (S.D. Tex. Jan. 24, 2020) (citing *Woodard v. Collins*, 898 F.2d 1027, 1029 (5th Cir. 1990)).

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review

because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009).  In order "to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the [movant] must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."  *Id.*; *see also Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985).

Here, Movant's allegations are refuted by the record.  Counsel filed a sentencing memorandum requesting a downward departure from the sentencing guidelines based on Movant's: (1) lack of guidance and traumatic experiences as a child that led to "a life of miscalculations," including suicide attempts and self-medication for depression; (2) multiple attempts to seek help for his issues; (3) history of drug addiction; and (4) medical diagnoses.  (doc. 161.) It included exhibits detailing his traumatic childhood, medical and psychological history, and history of substance abuse.  (*See* doc. 161-1.)  Counsel further supplemented the request with psychiatric and medical records, mitigation letters in support from Movant's family and friends, and institutional records.  (*See* docs. 164-164-4.)  At sentencing, counsel provided an additional letter in mitigation and again pursued a downward departure from the guidelines based on the arguments and evidence raised in the sentencing memorandum.  (*See* doc. 228 at 2, 4-5.)  Movant also spoke directly to the Court about his addiction and rehabilitation efforts.  (*See id.* at 5-7.)  The Court declined to depart or vary from the guideline range.  (*See id.* at 8.)

Movant's arguments that counsel failed to investigate or present evidence of childhood trauma and efforts to seek help for purposes of a downward departure are unsupported by the record and without merit.  Aside from conclusory and unsubstantiated statements, he fails to show

or explain what further investigation by counsel would have uncovered that would have been advantageous to him, and how it would have resulted in a different outcome.[13] *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) ("[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, a habeas court cannot even begin to apply *Strickland*'s standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance.") (citation and internal quotation marks omitted).  As for his allegations that counsel failed to interview and call family members, Movant has failed to name any alleged witnesses, and has provided no facts or evidence to show that any such witnesses were available to testify and would have done so, set out the content of their proposed testimony, or explain how any such testimony would have been favorable. *See Day*, 566 F.3d at 538; *Alexander*, 775 F.2d at 602.  He has not shown that counsel was deficient based on a failure to investigate or interview and call witnesses.

Regarding prejudice, "where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Hill v Lockhart*, 474 U.S. 52, 59 (1985).  Here, Movant has not shown that further investigation or witness interviews and testimony would have unearthed evidence that would have caused him to plead not guilty and proceed to trial, or that would have led counsel to change his recommendation as to the plea. *See Miller*, 200 F.3d at 282.  He has also failed to show *Strickland* prejudice, and

---

[13] That counsel was unsuccessful in obtaining a downward departure also does not render counsel ineffective. *See, e.g.*, *Youngblood v. Maggio*, 696 F.2d 407, 410 (5th Cir. 1983) ("The fact that trial counsel was unsuccessful in his efforts does not constitute, in light of the entire record, a basis for habeas corpus relief.").

the claim should be denied.

## IV.    INVOLUNTARINESS OF PLEA

In Supplemental Ground 1, Movant contends that "his plea agreement was not knowingly and voluntarily [sic] due to his attorney advising him that he would be sentenced to 120 months." (No. 3:20-CV-2852-N-BH, doc. 7 at 4; *see also id.*, doc. 7 at 2.)  He argues that if he "had known that his sentence would be higher than 120 months, he would not have accepted the plea agreement."  (*Id.*, doc. 7 at 4.)

A plea of guilty waives a number of constitutional rights.  *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'"  *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *accord Bousley v. United States*, 523 U.S. 614, 618 (1998) ("A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'") (quoting *Brady*, 397 U.S. at 748).  A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)) (internal quotation marks omitted).  In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect."  *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and

intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 367 n.22 (5th Cir. 2000). "Rule 11 of the Federal Rules of Criminal Procedure requires a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant." *United States v. Vonn*, 535 U.S. 55, 62 (2002). "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Id.* at 78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences of his guilty plea does not require a trial court to determine that the defendant has a perfect understanding of the consequences, however. The court must only ascertain whether the defendant has a realistic or reasonable understanding of his plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea"). Compliance with the admonishments required under Rule 11 "provides prophylactic protection for the constitutional rights involved in the entry of guilty pleas." *Id.* at 627.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fisher v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). Courts considering challenges to guilty pleas "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 417 (5th Cir. 2002). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced

to do so, the guilty plea. . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

As discussed, Movant's plea documents, the Court's questioning at his re-arraignment hearing, and his responses under oath demonstrate that he knew at the time he pled guilty that he was subject to a maximum term of 20 years' imprisonment, no one could predict with certainty the outcome of the Court's consideration of the sentencing guidelines, he should not depend or rely on any statement or promise by anyone, including counsel, about what his punishment would be, no promise or assurance had been made to him to get him to plead guilty outside of those in the plea documents, and his sentence was entirely up to the Court.  (*See* doc. 74 at 2-3, 6; doc. 229 at 7-9, 14-15.)  With this knowledge, he went forward with his guilty plea.

 Inmates who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  They must also overcome the presumption of regularity and "great weight" accorded court records.  *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that "official records are entitled to a presumption of regularity").

Movant has failed to overcome the presumption of verity given to his sworn statements in open court, and the great evidentiary weight accorded to court records.  *See Blackledge*, 431 U.S. at 73-74.  The contemporaneous plea documents and his sworn statements in open court, including his testimony about the maximum penalties to which he would be exposed, the absence of any

promise to get him to plead guilty, and the exclusive role of the Court in determining his sentence, contradict his claim that his plea was involuntary because he expected to be sentenced to ten years of imprisonment based on his counsel's alleged misrepresentations. *See id.* He also offers no facts or evidence beyond conclusory *post hoc* allegations to show a reasonable probability that he would have rejected the plea agreement and insisted on proceeding to trial in the absence of counsel's alleged misrepresentation about his sentence. *See Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (holding that a court should not "upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."); *United States v. Guzman*, No. 19-10783, 2021 WL 4610124, at *3 (5th Cir. Oct. 6, 2021) (per curiam) (holding that the movant "must substantiate any preference to proceed to trial—if he had been properly advised on the sentence he was facing—with 'contemporaneous evidence,' not post hoc assertions."). Movant fails to show that he is entitled to relief, and this claim should be denied.

## V.    EVIDENTIARY HEARING

Movant requests an evidentiary hearing in this case. (*See* No. 3:20-CV-2852-N-BH, doc. 6 at 6-7, 12; *id.*, doc. 7 at 5-8.) No evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A movant "is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" *Reed*, 719 F.3d at 373 (citation omitted). "[B]are, conclusory allegations unsupported by other indicia of reliability in the record, do not compel a federal district court to hold an evidentiary hearing." *Ross*, 694 F.2d at n.2.

Here, Movant has failed to demonstrate the existence of a factual dispute that creates a genuine issue. He also has failed to come forward with independent indicia in support of the likely

merit of his claims.  *See Reed*, 719 F.3d at 373.  Movant has therefore failed to demonstrate he is entitled to an evidentiary hearing on any of his claims.

## VI.    RECOMMENDATION

The *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on September 14, 2020 (doc. 1), should be **DENIED** with prejudice.

**SIGNED this 10th day of July, 2023.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE